IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------x
In re:                                                    :    Chapter 11
                                                          :
WASHINGTON MUTUAL, INC., et al.,                          :    Case No. 08-12229 (MFW)
                                                          :
                    Debtors.                              :    (Jointly Administered)
----------------------------------------------------------x
                                                          :
BROADBILL INVESTMENT CORP.,                               :
                                                          :
                    Plaintiff,                            :
                                                          :
v.                                                        :    Adv. Proc. No. 10-_____ (MFW)
                                                          :
WASHINGTON MUTUAL, INC.,                                  :
                                                          :
                    Defendant.                            :
----------------------------------------------------------x

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Broadbill Investment Corp. ("Plaintiff"), for its complaint (the "Complaint") against Defendant Washington Mutual, Inc. ("WMI" or the "Defendant"), alleges as follows:

### PRELIMINARY STATEMENT

1. This declaratory judgment action relates to the conveyance by Dime Bancorp ("Dime") and its board of directors (the "Dime Board") of the net proceeds, if any, from a litigation entitled *Anchor Savings Bank FSB v. United States*, No. 95-39C (the "Anchor Litigation"). In December 2000, the Dime Board determined to contract to convey the anticipated value from the Anchor Litigation to its shareholders. The Dime Board concluded that the optimal contractual means of conveying such value was through the issuance of what were nominally referred to as "Litigation Tracking Warrants" (the "LTWs"). The LTWs gave holders thereof (the "LTW Holders") the right to payment of the net proceeds from the Anchor

Litigation upon a "Trigger" by either (i) issuance of shares of Dime common stock with a market value at the time of issuance (including a discount thereto) that would enable the holder to realize the value of such net proceeds or (ii) payment of such other consideration as would enable the LTW Holders to realize the value of such net proceeds. Following the combination of Dime and WMI, the Anchor Litigation was transferred by The Dime Savings Bank FSB to Washington Mutual Bank ("WMB"), a subsidiary of WMI, and WMI became obligated to convey the value of the net proceeds of the Anchor Litigation to the LTW Holders.

2. Structuring the right to payment of the net proceeds from the Anchor Litigation as "LTWs" was not intended to expose the LTW Holders to equity or stock risk but rather to provide them with a direct, contractual claim for the value of the net proceeds of the Anchor Litigation. The terms of the LTWs and the governing Agreements (as defined below) make clear that the Dime Board did not intend for the LTWs to be either stock "warrants," equity securities or equity interests. Among other things, the LTWs are not exercisable into a fixed number of shares and the LTWs do not have an exercise price - - two fundamental and requisite elements of a stock warrant. The LTWs simply provide for the conveyance to the LTW Holders of the right to payment of the value of any recovery in the Anchor Litigation.

3. Section 6.3[1] of the Amended Agreement (as defined below) provides that WMB was to retain sole and exclusive control over the Anchor Litigation and 100% of any recovery therefrom. That provision was breached as a consequence of the sale or transfer of the recovery from the Anchor Litigation and the control thereof to JPMorgan Chase Bank, N.A. ("JPMorgan")

---

[1] Section 6.3 of the Original Agreement (as defined below) and Section 6.3 of the Amended Agreement (as defined below) are identical in all respects.

for value in September 2008.[2] The LTW Holders have been deprived of the value of the purchase price paid by JPMorgan for the Anchor Litigation.

4. Section 4.4[3] of the Amended Agreement protects the rights of the LTW Holders by providing that if an "event" occurs that would frustrate WMI's ability to use its common stock as a currency to convey to the LTW Holders payment of the net proceeds of the Anchor Litigation, WMI must nonetheless fulfill the intent of the Agreements by providing payment of such value to the LTW Holders by alternative means.

5. By this action, Plaintiff seeks, *inter alia*, declaratory relief that: (i) the sale and transfer of control over, and the recovery from, the Anchor Litigation to JPMorgan constitute a breach and default under Section 6.3 of the Amended Agreement, which gives rise to a claim in favor of the LTW Holders for WMI's failure to provide the LTW Holders with the proceeds from such sale and transfer; (ii) if WMI's existing common stock is to be extinguished or cancelled, Section 4.4 of the Amended Agreement mandates that the LTW Holders have claims against WMI in the amount of the net proceeds of the Anchor Litigation; (iii) the LTWs do not constitute either stock warrants, equity securities or equity interests in WMI; and (iv) the LTWs represent the "right to payment" of value and are "claims" against WMI's estate.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

---

[2] Upon information and belief, the recovery from and control over the Anchor Litigation were sold or transferred to JPMorgan, pursuant to a certain Purchase and Assumption Agreement, dated as of September 25, 2008. To the extent such sale and/or transfer occurred, Section 6.3 of the Amended Agreement was breached as a result.

[3] Section 4.4 of the Original Agreement and Section 4.4 of the Amended Agreement are identical in all respects.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a). This action constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This adversary proceeding is commenced pursuant to 11 U.S.C. § 105, 28 U.S.C. § 2201 and applicable law of the State of New York.

## PARTIES

### I. Plaintiff

8. Plaintiff Broadbill Investment Corp. ("Broadbill" or "Plaintiff") is a corporation organized under the laws of the State of Florida with its principal place of business in Florida. Plaintiff is a beneficial holder and owner of LTWs.

### II. Defendant

9. Defendant WMI is, upon information and belief, a corporation organized under the laws of the State of Delaware.

## FACTS

### III. Background

#### A. The Anchor Litigation

10. Between 1982 and 1985, Anchor Savings Bank FSB ("Anchor FSB") acquired eight failing savings and loan institutions, the deposits of which were insured by the Federal Savings and Loan Insurance Corporation (the "FSLIC"). In acquiring such institutions, Anchor FSB assumed liabilities determined to exceed the assets it acquired by over $650 million in the aggregate. The difference between the fair values of the assets acquired and the liabilities assumed in such transactions was recorded on Anchor FSB's books as "goodwill." At the time of these acquisitions, the FSLIC had agreed that Anchor FSB, among other things, could include such "goodwill" in its regulatory capital.

4

11. When the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") was enacted, Anchor FSB still had over $500 million of regulatory capital from supervisory acquisitions on its books, including the "goodwill" described in paragraph 10 above. FIRREA, however, required the remaining supervisory goodwill to be eliminated immediately for purposes of calculating tangible capital and to be phased out through December 31, 1994 for other regulatory capital purposes. The elimination of the supervisory goodwill and other components of regulatory capital damaged Anchor FSB by creating severe limitations on its activities and requiring the sale of valuable assets under liquidation-like circumstances

12. On January 13, 1995, Anchor FSB filed a lawsuit (the "Anchor Litigation") against the United States government in the United States Court of Federal Claims (captioned *Anchor Savings Bank FSB v. United States*, No. 95-39C), alleging breach of contract and taking of property without compensation in contravention of the Fifth Amendment to the United States Constitution. Shortly after the Anchor Litigation was commenced, Dime acquired Anchor and The Dime Savings Bank of New York, FSB ("Dime FSB") acquired Anchor FSB. In connection therewith, the Anchor Litigation was transferred to Dime FSB. On January 4, 2002, Dime FSB merged into WMB and WMB assumed Dime FSB's rights under the Anchor Litigation, and WMI assumed Dime's obligations under the LTWs and the Original Agreement (as defined below).

13. On March 14, 2008, the U.S. Court of Federal Claims issued an order and findings that Anchor was entitled to damages for the lost profits and awarded additional damages. The Court's order and findings concluded that Anchor FSB had incurred recoverable damages in the amount of approximately $382 million, plus an undetermined amount for a gross-

up of Anchor FSB's tax liabilities. On July 16, 2008, the Court reduced the judgment to approximately $356 million. On March 10, 2010, the Federal Circuit Court of Appeals affirmed the judgment of approximately $356 million, and also remanded the case to the Court of Federal Claims for further determination of whether that court had made a calculation error and should increase the damage award by as much as an additional $63 million.

**B.    The LTWs**

14.    On December 22, 2000, Dime distributed LTWs to holders of outstanding shares of its common stock. The LTWs were registered under a registration statement dated December 15, 2000 (as amended, the "Registration Statement") and were issued pursuant to an agreement referred to as a Warrant Agreement (the "Original Agreement"), dated as of December 21, 2000, by and among Dime, EquiServe Trust Company, N.A. and EquiServe Limited Partnership (as agents). On January 4, 2002, Dime merged into WMI and WMI assumed Dime's obligations under the LTWs. On March 11, 2003, WMI and Mellon Investor Services LLC entered into the 2003 Amended and Restated Warrant Agreement (the "Amended Agreement" and together with the Original Agreement, individually and collectively, the "Agreements"), which amended and restated the terms of the Original Agreement. The LTW Certificates incorporate the terms and conditions of the then applicable Agreement.

15.    The Registration Statement plainly states that the intent in issuing, and the principles underlying the issuance of, the LTWs was to pass the value of the net proceeds of the Anchor Litigation to the LTW Holders. The Registration Statement, at page 1, states: "Why are we distributing the LTWs? We are distributing the LTWs *in an effort to pass along the potential value of our claim against the government to our existing stockholders . . . .*" (Emphasis added.)

16. The Registration Statement also is clear that the LTWs are not stock warrants, equity securities or equity interests. The Registration Statement, at page 5, states: "An investment in the LTWs involves different risks and considerations from an investment in the common stock of a savings and loan holding company such as Dime Bancorp."

C. **The Sale to JPMorgan and the Debtors' Proposed Plan**

17. On September 25, 2008, the FDIC was appointed as a receiver for WMB and immediately took possession of WMB's assets. The FDIC promptly sold substantially all the assets of WMB (including the recovery from the Anchor Litigation and control thereof) to JPMorgan in exchange for payment of $1.88 billion and the assumption of all of WMB's deposit liabilities.

18. On September 26, 2008, WMI and WMI Investment Corp. (the "Debtors") each commenced a Chapter 11 case with this Court. On March 26, 2010, the Debtors filed a proposed Chapter 11 plan (the "Proposed Plan"). Section 24.1 of the Proposed Plan provides that the LTW Holders shall receive no distribution under the Proposed Plan and the LTWs shall be deemed to be extinguished and canceled on the Effective Date (as defined in the Proposed Plan). Section 25.1 of the Proposed Plan provides that holders of WMI common stock shall receive no distribution under the Proposed Plan and the shares of WMI common stock shall be deemed to be extinguished and canceled on the Effective Date.

**FIRST CAUSE OF ACTION**

**Declaratory Judgment (Breach of Section 6.3 of the Amended Agreement)**

19. Plaintiff repeats and realleges all of the preceding allegations of this Complaint as though set forth fully herein.

20. Section 6.3 of the Amended Agreement requires WMB to retain control over and ownership of the recovery from the Anchor Litigation for the benefit of the LTW Holders: "[WMB] will retain sole and exclusive control of the [Anchor] Litigation and will retain 100% of any recovery from the [Anchor] Litigation."

21. Section 6.3 of the Amended Agreement exists to protect the LTW Holders from the sale or transfer of the Anchor Litigation which would eliminate or avoid the occurrence of a Trigger and thereby frustrate the intent and purpose of the LTWs and the Agreements.

22. In or about September 2008, the FDIC, in its capacity as receiver for WMB, sold to JPMorgan substantially all of WMB's assets, including control over and any recovery from the Anchor Litigation. The receipt of proceeds or value from the sale or transfer of the Anchor Litigation should have been deemed the initial "Trigger" event under the Amended Agreement; otherwise, such sale or transfer would have made the occurrence of a "Trigger" (as defined in the Agreements) an impossibility. Upon receipt of such value for the Anchor Litigation, WMI should have taken the necessary steps to consummate a Trigger. For instance, in September 2008, WMI could have issued shares of common stock to the LTW Holders with a market value, at the time of such issuance, that would have enabled the LTW Holders immediately to realize the value, and obtain payment, of such net proceeds. That would have then allowed the LTW Holders to receive the benefit of their bargain under the LTWs upon the sale of such shares.

23. Section 6.3 of the Amended Agreement was breached when control over, and any recovery from, the Anchor Litigation was sold to JPMorgan. The LTW Holders were then entitled to receive the value of the net proceeds on account of such sale or transfer to JPMorgan in the form of either (i) shares of WMI common stock in an amount then having a market value

that would have enabled the LTW Holders to immediately realize payment of such net proceeds (given that at the time of the sale and/or transfer, and to date, there was, and continues to be, an active, liquid and robust $1 billion plus market for WMI common stock) or (ii) such other equivalent consideration or value.

24. As a consequence of the foregoing, the LTW Holders are entitled to a claim for damages against WMI resulting from WMI's failure to provide the LTW Holders with the value of the net proceeds received for the sale or transfer of the Anchor Litigation to JPMorgan.

## SECOND CAUSE OF ACTION

### Declaratory Judgment (Section 4.4 of the Agreements)

25. Plaintiff repeats and realleges all of the preceding allegations of this Complaint as though set forth fully herein.

26. Defendant has proposed a Chapter 11 plan that would eliminate and cancel all of WMI's common stock which, if confirmed, would make it impossible for WMI to pay to the LTW Holders the value of the net proceeds of the Anchor Litigation in WMI common stock.

27. Section 4.4 of the Agreements provides: "If any event occurs as to which the foregoing provisions of this Article IV are not strictly applicable or, if strictly applicable, would not, in the good faith judgment of the Board, fairly and adequately protect the rights of the Holders of the LTWs in accordance with the essential intent and principles of such provisions, then the Board may make, without the consent of the Holders, such adjustments to the terms of this Article IV, in accordance with such essential intent and principles, as will be reasonably necessary, in the good faith opinion of such Board, to protect such purchase rights as aforesaid."

28. Cancellation of WMI's common stock would be an "event" within the meaning of Section 4.4 of the Agreements. WMI and its Board must therefore act to protect the rights of the LTW Holders.

29. The "essential intent and principles" referred to in Section 4.4 of the Agreements is for the LTW Holders to be paid the net proceeds of the Anchor Litigation.

30. Thus, under Section 4.4 of the Amended Agreement, if WMI's common stock is to be cancelled, WMI and its Board of Directors must allow an unsecured claim in WMI's Chapter 11 case in favor of the LTW Holders in an amount equal to the net proceeds of the Anchor Litigation.

## THIRD CAUSE OF ACTION

### Declaratory Judgment (The LTWs Are Not Stock Purchase Warrants, Equity Securities or Equity Interests)

31. Plaintiff repeats and realleges all of the preceding allegations of this Complaint as though set forth fully herein.

32. The terms of the LTWs and the Agreements make clear that the Dime Board did not intend for the LTWs to be stock warrants, equity securities or equity interests. In fact, as a matter of law, the LTWs are not stock warrants, equity securities or equity interests. Among other things, the LTWs are not exercisable into a fixed number of shares and the LTWs do not have an exercise price - - two fundamental and requisite elements of a stock warrant.

33. Further, because the aggregate value of shares issuable pursuant to the LTWs does not change upon a change in value of WMI's common stock, the LTWs do not contain the hallmark characteristic of equity - - equity risk. The holder of an LTW receives the exact same value from an LTW regardless of the value of the underlying shares. For example, if WMI

common stock had a value, or a trading price, of $.0001 per share, the LTWs would nonetheless be entitled, in the aggregate, to the full net proceeds of the Anchor Litigation.

34. Accordingly, this Court should determine that the LTWs constitute claims against WMI and not stock purchase warrants, equity securities or equity interests.

## FOURTH CAUSE OF ACTION

### Declaratory Judgment (LTWs Represent the Right to Payment of Value and Constitute a Claim Against WMI)

35. Plaintiff repeats and realleges all of the preceding allegations of this Complaint as though set forth fully herein.

36. The LTWs are "claims" - - they represent a "right to payment" of the value of the net proceeds of the Anchor Litigation and not merely a right to receive WMI common stock. Structuring the right of the LTW Holders to receive the net proceeds of the Anchor Litigation in such a manner was not intended to expose the LTW Holders to equity risk - - but, rather, was intended to provide the LTW Holders with a direct, contractual claim for the value represented by the Anchor Litigation.

37. That WMI may be incapable of delivering to the LTW Holders value in the form of existing WMI common stock (given that such stock may be extinguished under a proposed Chapter 11 plan for WMI) does not extinguish WMI's obligation under the LTWs and the Amended Agreement to provide the LTW Holders with the value of the net proceeds of the Anchor Litigation. Among other things, the Amended Agreement's use of a formula based on trading values upon issuance (less a liquidity discount) demonstrates that the LTW Holders are entitled to receive payment of a specific and defined amount equal to the net proceeds of the Anchor Litigation. It is not a mere mistake or error that absent from the numerous Risk Factors

in the Registration Statement under which the LTWs were issued is any mention of the possibility that the issuer could file for bankruptcy and its common stock could thereby be rendered worthless.

38. Accordingly, the LTW Holders are entitled to an allowed claim against WMI in the amount equal to the net proceeds of the Anchor Litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) On the First Cause of Action, a judgment declaring that the sale and transfer of control over, and the recovery from, the Anchor Litigation to JPMorgan constitutes a breach and default under Section 6.3 of the Amended Agreement which gives rise to a claim in favor of the LTW Holders for WMI's failure to provide the LTW Holders with the proceeds from such sale and transfer;

(b) On the Second Cause of Action, a judgment declaring that if WMI's existing common stock is to be extinguished or cancelled, Section 4.4 of the Amended Agreement mandates that the LTW Holders have claims against WMI in the amount of the net proceeds of the Anchor Litigation;

(c) On the Third Cause of Action, a judgment declaring that the LTWs do not constitute either stock warrants, equity securities or equity interests in WMI;

(d) On the Fourth Cause of Action, a judgment declaring that the LTWs represent the "right to payment" of value (not necessarily by issuance of WMI common stock) and are "claims" against WMI's estate;

(e) An award to Plaintiff of the costs and disbursements of this action, including reasonable attorneys' fees; and

(f) Such other and further relief as this Court may deem just and proper.

Dated: April 12, 2010

COZEN O'CONNOR

Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

- and -

ANDREWS KURTH LLP
Paul N. Silverstein (NYS Bar No. PS 5098)
J. Wiley George (TX Bar No. 07805445)
Jonathan I. Levine (NYS Bar No. JL 9674)
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Counsel to Broadbill Investment Corp.*