# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al., | Case No. 08-12229 (MFW) |
| Debtors. | Jointly Administered |
| | |
| BROADBILL INVESTMENT CORP., | |
| Plaintiff, | Adv. Pro. No. 10-50911 (MFW) |
| -v. | |
| WASHINGTON MUTUAL, INC., | |
| Defendant. | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: June 7, 2010

.

Mark E. Felger (No. 3919)
COZEN O'CONNOR
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

Paul N. Silverstein (*admitted pro hac vice*)
ANDREWS KURTH LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Counsel to Broadbill Investment Corp.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    1.  The Standard of Review for Dismissal Under Rule 12(b)(6). ......................................... 2

    2.  WMI's Arguments that Broadbill Does Not Have Standing to Pursue Declaratory Relief Have No Merit and Should be Denied. ............................................................................. 3

    3.  WMI's Arguments Regarding the Ripeness of Broadbill's Claims Lack Merit and Should Be Denied. ................................................................................................................. 7

        a.  Broadbill's Complaint Plainly Meets the Ripeness Requirements Under Third Circuit Law ....................................................................................................... 7

        b.  WMI's Other Arguments Regarding Ripeness Do Not Have Merit and Should Be Summarily Rejected. ................................................................................................. 9

    4.  WMI's Argument that the LTW Holders Do Not Have a Direct Right To Participate in the Anchor Litigation Recovery Should Be Rejected. ................................................... 11

    5.  WMI's Arguments That LTWs Constitute "Equity Securities" Do Not Have Merit and Should Also Be Rejected. ............................................................................................. 13

CONCLUSION ................................................................................................................. 19

NYC:212757.11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adkins v. Rumsfeld,*
  450 F. Supp. 2d 440 (D. Del. 2006)..................................................................2

*In re Am. W. Airlines, Inc.,*
  179 B.R. 893 (Bankr. D. Ariz. 1995)..............................................................14

*Armstrong World Industries, Inc. v. Adams,*
  961 F.2d 405 (3rd Cir. 1992) ...........................................................................8

*In re Baldwin-United Corp., D.H.,*
  52 B.R. 549 (Bankr. S.D. Ohio 1985)............................................................14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..........................................................................................3

*Blank, Rome, Comisky & McCauley Asbestos Cases,*
  55 B.R. 722 (D.C.Pa. 1985) ..............................................................................4

*Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,*
  284 F. Supp. 987, 994 (S.D.N.Y. 1968).........................................................17

*In re Enron Corp.,*
  302 B.R. 463 (Bankr. S.D.N.Y. 2003)..............................................................6

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009)..............................................................................3

*Golden v. Zwickler,*
  394 U.S. 103, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969)..................................4, 5

*Goleta Nat'l Bank v. O'Donnell,*
  239 F. Supp. 2d 745 (S.D. Ohio 2002) .............................................................4

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.,*
  889 F.2d 1274 (2d Cir.1989).............................................................................17

*In re Insilco Technologies, Inc.,*
  351 B.R. 313 (Bkrtcy. D. Del. 2006) ..............................................................4, 5

*International Klafter Co. v. Continental Casualty Co.,*
  869 F.2d 96 (2d Cir.1989)...............................................................................16

ii

*Khodara Envtl, Inc. v. Burch,*
   245 F. Supp. 2d 695 (W.D. Pa. 2002)..................................................................4

*Kost v. Kozakiewicz,*
   1 F.3d 176 (3d Cir. 1993)...............................................................................2

*In re Lawton,*
   261 B.R. 774 (Bankr.M.D.Fla. 2001) .............................................................14

*Mallinckrodt Inc. v. E-Z-EM Inc.,*
   671 F. Supp. 2d 563 (D. Del. 2009) ................................................................3

*O'Bannon v. Friedman's, Inc.,*
   437 F. Supp. 2d 490 (D.Md. 2006) ..................................................................4

*Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,*
   998 F.2d 1192 (3d Cir. 1993)..........................................................................3

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008)...........................................................................3

*In re Privacy Infrastructure, Inc.,*
   329 B.R. 580 (Bankr.N.D.Tex. 2005)..............................................................4

*Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.,*
   198 F.3d 415 (3d Cir. 1999)..........................................................................16

*In re SmarTalk Teleservices, Inc.,*
   124 F. Supp. 2d 487 (S.D. Ohio 2000) ..........................................................16

*Step-Saver Data Systems, Inc. v. Wyse Technology,*
   912 F.2d 643 (3d Cir. 1990)...........................................................................8

*In re Submicron Sys. Corp.,*
   432 F.3d 448 (3d Cir. 2006)..........................................................................18

*Travelers Ins. Co. v. Obusek,*
   72 F.3d 1148 (3d Cir. 1995).......................................................................7, 8

*Walk-In Medical Centers, Inc. v. Breuer Capital Corp.,*
   818 F.2d 260 (2d Cir. 1987)..........................................................................17

iii

## STATE CASES

*Atwater & Co. v. Panama R.R. Co.*
246 N.Y. 519 (N.Y. 1927) ..........................................................................16

*Beal Sav. Bank v. Sommer,*
865 N.E.2d 1210 (N.Y. 2007)......................................................................6

*Breed v. Insurance Co. of North America,*
413 N.Y.S.2d 352 (1978)............................................................................17

*In re Initial Public Offering Securities Litigation,*
2004 WL. 3015304 (S.D.N.Y.)...................................................................16

*Morlee Sales Corp. v. Manufacturers Trust Co.,*
210 N.Y.S.2d 516 (1961) ............................................................................16

*Reiss v. Financial Performance Corp.,*
764 N.E.2d 958 (NY 2001) .........................................................................15

*Robert Half International, Inc. v. Franchise Tax Board,*
78 Cal. Rptr. 2d 453 (Cal. Ct. App. 1998) ................................................15

*Slatt v. Slatt,*
488 N.Y.S.2d 645 (1985).............................................................................16

*Sutton v. East River Savings Bank,*
55 N.Y.2d 550, 435 N.E.2d 1075, 450 N.Y.S.2d 460 (1982)...................17

*Teitelbaum Holdings, Ltd. v. Gold,*
48 N.Y.2d 51, 396 N.E.2d 1029, 421 N.Y.S.2d 556 (1979)....................16

## STATUTES

F.R.C.P. 12(b)(6) ..............................................................................................1

28 U.S.C. §1746................................................................................................21

28 U.S.C. §2201(a) .............................................................................................4

NYC:212757.11

Plaintiff, Broadbill Investment Corp. ("Plaintiff" or "Broadbill"), respectfully submits this Answering Brief (the "Response") in Opposition to Defendant, Washington Mutual, Inc.'s ("WMI's" or "Defendant's") Motion (the "Motion"), dated May 17, 2010, for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") and Rules 7012 and 7009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), dismissing Plaintiff's Complaint (the "Complaint").[1]

## PRELIMINARY STATEMENT

On April 12, 2010, Broadbill commenced an adversary proceeding against WMI, captioned *Broadbill Investment Corp. v. Washington Mutual, Inc.*, Adv. Pro. No. 10-50911 (MFW) (the "Declaratory Judgment Action"), in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"). In its Declaratory Judgment Action, Broadbill focused on four discrete declarations related to Litigation Tracking Warrants ("LTWs") that were issued pursuant to a Warrant Agreement, dated as of December 21, 2000 (the "Original Agreement") and a 2003 Amended and Restated Warrant Agreement, dated as of March 11, 2003 (the "Amended Agreement").

Under WMI's proposed Plan of Reorganization (the "Proposed Plan"), WMI treats the LTWs as equity interests that would be extinguished upon WMI's emergence from bankruptcy. Holders of LTWs would receive no recovery on account of their LTWs. As set forth in the Complaint, the LTWs are not equity interests, and the Amended Agreement was breached and violated. Accordingly, Broadbill has sought the following four declarations:

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning attributed to such terms in the Complaint.

(i)     A declaration that the sale or transfer of the Anchor Litigation to JPMorgan constituted a breach and default under Section 6.3 of the Amended Agreement (Count 1);

(ii)    A declaration that if WMI's existing common stock is extinguished or cancelled (as is contemplated by WMI's Proposed Plan), Section 4.4 of the Amended Agreement requires that the holders of the LTWs have a claim against WMI in the amount of the net proceeds of the Anchor Litigation (Count 2);

(iii)   A declaration that the LTWs do not constitute either stock warrants, equity securities or equity interests in WMI (Count 3); and

(iv)    A declaration that the LTWs represent the "right to payment" of value (not necessarily by issuance of WMI's common stock) and are "claims" against WMI's estate (Count 4).

On May 17, 2010, WMI filed the Motion seeking dismissal of Broadbill's Complaint under Rule 12(b)(6). As discussed further herein, although nominally styled as an attack on the Complaint under Rule 12(b)(6), the Motion is, in reality, an attack on alleged procedural deficiencies of claims that Broadbill properly pled in its Complaint and, as to the substance of the matters alleged in the Complaint, a "general denial" one would find in an answer to a complaint. Consequently, all of the arguments that WMI has raised in its Motion pursuant to Rule 12(b)(6) should be denied because Broadbill's pleadings are more than sufficient to sustain its claims for relief, and WMI's merit-based arguments can and should only be decided at trial.

## ARGUMENT

### 1.     The Standard of Review for Dismissal Under Rule 12(b)(6).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Adkins v. Rumsfeld*, 450 F.Supp.2d 440, 444 (D. Del. 2006) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). Accordingly, in deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit*

2

*Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), the complaint need only set out "'sufficient

factual matter' to show that the claim is facially plausible," *Fowler v. UPMC Shadyside*, 578

F.3d 203, 210 (3d Cir. 2009), in order to "'allow[] the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1948 (2009)). The complaint need not make detailed factual allegations. *Mallinckrodt*

*Inc. v. E-Z-EM Inc.*, 671 F.Supp.2d 563, 568 (D. Del. 2009). Nor does the standard "'impose a

probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*

*v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 556 (2007)). Finally, in reviewing a motion to dismiss under Rule 12(b)(6), the

Court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips*, 515 F.3d at

233).[2]

**2. WMI's Arguments that Broadbill Does Not Have Standing to Pursue Declaratory Relief Have No Merit and Should be Denied.**

Under the Federal Declaratory Judgment Act, this Court has the power to "declare the

rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought," and such declarations "shall have the force and effect of a

---

[2] Specifically in adversary proceedings, this Court has recently ruled that Rule 12(b)(6) motions should not be given much weight, and there is a preference to permit the actions so that they may be judged on their merits. *See In re Washington Mutual, Inc., et al.*, Case No. 08-12229 (MFW), Adv. Case No. 10-50731 (MFW), Hr'g. Tr., pp. 126-27 (Apr. 6, 2010).

NYC:212757.11

final judgment or decree and shall be reviewable as such." 28 U.S.C. §2201(a).[3] In connection

with such claims, "standing is present when there is 'a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.'" *In re Insilco Technologies, Inc.*, 351 B.R. 313, 319 (Bkrtcy. D. Del.

2006) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed 2d 113 (1969)).

As set forth in the Complaint, Broadbill owns LTWs and, to the extent necessary, the

Court can take judicial notice of such ownership by Broadbill of LTWs.[4] Accordingly, Broadbill

has an interest in the LTWs that is directly impacted by, among other things, (i) WMI's proposed

classification of the LTWs under the Proposed Plan as equity interests, and (ii) WMI's decision

under the Proposed Plan to extinguish and cancel the LTWs without any distributions.

Moreover, regardless of how the LTWs are classified and treated under the Proposed Plan,

Broadbill's interest in the LTWs is also directly impacted by any breaches under the Amended

Agreement, as is alleged in the Complaint.

The proposed treatment of the LTWs under the Proposed Plan is not in dispute. This

Court can take judicial notice of the proposed treatment as described in WMI's Disclosure

Statement for the Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of

the United States Bankruptcy Code (the "Proposed Disclosure Statement"), p.86 [Docket No.

---

[3] "The Federal Declaratory Judgment Act gives a federal district court the authority, in any 'case of actual controversy within its jurisdiction,' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *O'Bannon v. Friedman's, Inc.*, 437 F.Supp.2d 490, (D.Md. 2006) (citing 28 U.S.C. § 2201(a) (2006)); *see also Blank, Rome, Comisky & McCauley Asbestos Cases*, 55 B.R. 722, 723 (D.C.Pa. 1985); *see e.g., In re Privacy Infrastructure, Inc.*, 329 B.R. 580, 588-89 (Bankr.N.D.Tex. 2005).

[4] On December 18, 2009, Broadbill filed a Notice of Partial Transfer of Claim Pursuant to F.R.B.P. Rule 3001(e)(2) with respect to Claim No. 2036 in the Debtor's bankruptcy cases. *See* Docket No. 2029. As specified therein, such Claim stems from the ownership of LTWs.

4

4242]. In addition, as detailed in the Complaint, Broadbill has pled facts that, if taken as true as required when deciding a Rule 12(b)(6) motion, would be sufficient to establish that:

(i) The Amended Agreement was breached upon the sale and transfer of control over and any recovery from the Anchor Litigation to JPMorgan without distribution of the value of the proceeds from such sale or transfer to the LTW Holders as required by the Amended Agreement;

(ii) If WMI's existing common stock were cancelled (as is contemplated by the Proposed Plan), Section 4.4 of the Amended Agreement would require that the holders of the LTWs have a claim against WMI in the amount of the net proceeds of the Anchor Litigation;

(iii) The LTWs do not constitute, and were never intended to constitute, either stock warrants, equity securities or equity interests in WMI; and

(iv) The LTWs represent the "right to payment" of value, not necessarily by issuance of WMI's common stock, and are "claims" against WMI's estate.

*See* Complaint, at pp. 4-7.

Because the resolution of these issues would have a direct impact on Broadbill's interest in the LTWs, Broadbill has standing to pursue these issues in the Declaratory Judgment Action. *See e.g., In re Insilco.*, 351 B.R. at 319; *Golden*, 394 U.S. at 108.

WMI nevertheless has argued that Broadbill does not have standing to pursue this lawsuit because Broadbill has not pled that it complied with certain notice provisions contained in Section 6.2 of the Amended Agreement. *See* Motion, at pp. 11-12. Preliminarily, this argument should be rejected because the terms of Section 6.2 of the Amended Agreement do not apply to requests for declaratory relief such as that being sought in Broadbill's Complaint. By its terms, Section 6.2 of the Amended Agreement only applies to lawsuits that seek to require "[WMI] to enforce or otherwise act in respect of the [LTW]." *See* Amended Agreement, at ¶ 6.2. The

Declaratory Judgment Action does not fit within this requirement because it is only seeking to clarify the rights and responsibilities of the parties for the reasons described in the Complaint.

Even if Section 6.2 is applicable, it does not support a dismissal based on Rule 12(b)(6) because there is no requirement in Section 6.2 of the Amended Agreement that Broadbill plead compliance with Section 6.2 in order to pursue a claim.[5] Moreover, in any event, Broadbill has complied with Section 6.2 of the Amended Agreement. Attached as <u>Exhibit A</u> hereto is the declaration of Paul N. Silverstein, dated June 7, 2009 (the "<u>Silverstein Declaration</u>"), which includes various letters provided by certain holders of LTWs indicating their support of the Declaratory Judgment Action. Broadbill and the LTW Holders that provided the attached supporting letters collectively own 36% of the issued and outstanding LTWs - - well in excess of the 25% referred to in Section 6.2 of the Amended Agreement. In addition, the Warrant Agent was given more than 30 days notice of the relief sought by Broadbill through notice provided on April 14, 2010 and through the Complaint filed in the Declaratory Judgment Action. The Warrant Agent, however, has not joined this proceeding or otherwise instituted a separate proceeding seeking the same relief. This is not a surprise given that, pursuant to the Amended Agreement, the Warrant Agent is WMI's agent, not an agent of the LTW holders. *See* Amended Agreement, at § 5.1.

---

[5] In addition, the two cases cited by WMI in support of its standing argument are distinguishable because they both involve contractual provisions that vested exclusive authority to pursue a lawsuit based on that contract to another entity. *In re Enron Corp.*, 302 B.R. 463 (Bankr. S.D.N.Y. 2003); *Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210 (N.Y. 2007). In the present circumstances, Section 6.2 of the Amended Agreement provides no such exclusive authority to the Warrant Agent, and in fact provides that the decision of whether the Warrant Agent pursues a claim is wholly within the Warrant Agent's discretion.

NYC:212757.11

3. **WMI's Arguments Regarding the Ripeness of Broadbill's Claims Lack Merit and Should Be Denied.**

To determine whether a declaratory judgment action is ripe for adjudication, the Court of Appeals for the Third Circuit has stated that the trial court should focus on three factors: (i) whether the interest between the parties are adverse, (ii) whether the declaratory judgment would have conclusive effect, and (iii) whether the declaratory judgment would have utility. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). In its Motion, WMI does not even purport to analyze these three factors individually, but instead generally argues that the lawsuit is not ripe for adjudication based on arguments that either mischaracterize Broadbill's allegations or attempts to adjudicate the underlying merits of the dispute without providing the parties an opportunity to develop and present an appropriate record to this Court. As discussed herein, Broadbill's claims for relief are ripe for adjudication by this Court, and WMI's arguments to the contrary lack merit.

a. **Broadbill's Complaint Plainly Meets the Ripeness Requirements Under Third Circuit Law.**

As previously indicated, a declaratory judgment action is ripe for adjudication under Third Circuit law if the interests of the parties are adverse, and the ruling by the court would have a conclusive effect and utility to the parties or the court. *Travelers Ins. Co.*, 72 F.3d at 1154. Broadbill's allegations in the Complaint easily satisfy these elements.

Specifically, the Third Circuit has held that the parties' interests are adverse for purposes of ripeness when harm will result if the declaratory judgment is not entered. *Id.* at 1154. Moreover, a party seeking declaratory relief does not have to wait until the harm has actually occurred before filing a lawsuit, but instead can bring an action when the harm is merely threatened in the future, so long as the probability of the future harm is real and substantial.

7

*Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 412 (3rd Cir. 1992); *Travelers Ins. Co.*, 72 F.3d at 1154.

Here, there is no legitimate basis to claim that Broadbill's Complaint does not establish an adversity of interest. As pled in the Complaint, Broadbill is a holder of LTWs, which WMI is threatening to cancel for zero consideration under its Proposed Plan. Moreover, a favorable declaration by the Court on one or more of Broadbill's claims for relief would eliminate this threatened harm. As such, Broadbill's interests are plainly adverse to WMI.

For similar reasons, the relief requested in the Complaint would be both conclusive and have utility to the parties and the Court. For purposes of ripeness, an action is conclusive when the legal status of the parties would be changed or clarified by the proposed declaration, and the action has utility if it will provide some "practical help to the parties." *Travelers Inc. Co.*, 72 F.3d at 1155; *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 648 (3d Cir. 1990). Here, Broadbill's request for declaratory relief seeks to establish and clarify the nature and legal and contractual effect of the LTWs, and to determine whether WMI's prior conduct breached the Amended Agreement. Such a clarification and ruling would also have utility to the parties and the Court as such directly relates to the Chapter 11 Cases. Consequently, Broadbill's Complaint is ripe for adjudication, and WMI's argument that the Complaint lacks ripeness should be denied.

**b. WMI's Other Arguments Regarding Ripeness Do Not Have Merit And Should Be Summarily Rejected.**

WMI nonetheless argues that the Complaint is not ripe for adjudication because, according to WMI, (i) the claims in the Complaint are contingent on certain triggering events described in the Amended Agreement that have purportedly not yet occurred, (ii) Broadbill has

8

purportedly "failed to plead that the LTW Holders are able to exercise the LTWs," and/or (iii) Broadbill's interpretation of the Amended Agreement is purportedly incorrect. *See* Motion, at pp. 13-15. None of these arguments support the Motion because they either (i) misstate the current state of facts in the underlying Anchor Litigation, (ii) misstate Broadbill's allegations in the Complaint, or (iii) constitute an attempt by WMI to litigate the underlying merits of the dispute before the parties have had an opportunity to conduct any discovery or develop an appropriate record for the Court's review.

To the extent WMI contends that the triggering event requires receipt of an actual recovery by WMI in the underlying Anchor Litigation, the Court can take judicial notice that such recovery is imminent. On March 10, 2010, the Federal Circuit Court of Appeals affirmed a prior judgment in favor of the plaintiff in the Anchor Litigation of approximately $356 million and remanded the case to the Court of Federal Claims to determine whether a calculation error should <u>increase</u> the award by up to an additional $63 million. Proposed Disclosure Statement, at p. 48. All such facts and allegations are not contingent, and if assumed to be true as required when considering a Rule 12(b)(6) Motion, support Broadbill's request for declaratory relief. Further, WMI's argument that the relief requested in Broadbill's Complaint is contingent because a triggering event has not yet occurred and/or that Broadbill has not pled that LTW Holders are able to exercise the LTWs is based on a misrepresentation of Broadbill's allegations. Broadbill has alleged, among other things, that the sale of the Anchor Litigation to JPMorgan triggered Broadbill's rights under the LTWs, and that WMI's failure to give effect to such triggering event was a breach of the Amended Agreement. Complaint, at ¶ 19-24.

NYC:212757.11

Similarly, Broadbill has alleged in the Complaint that the intent surrounding the issuance of the LTWs, as described in the Registration Statement and in the Amended Agreement, was for the LTW Holders to receive the value of the net proceeds of the Anchor Litigation. Complaint, at ¶ 15. Broadbill has further alleged that under Section 4.4 of the Amended Agreement, to the extent such value cannot be provided to the LTW Holders in the form of WMI common stock, the LTW Holders are nonetheless entitled to receive such value as claims against WMI's estate. Complaint, at ¶ 14-16, 25-30. Broadbill has alleged in its Complaint that the LTWs represent a "right to payment" of the value of the net proceeds of the Anchor Litigation, and not merely a right to receive WMI common stock.

In factual support of all of these allegations, Broadbill pointed out in its Complaint that (i) the formula used in the Amended Agreement to distribute the value of the Anchor Litigation to the LTW Holders entitles the Holders to a specific and defined amount of value equal to the proceeds from the Anchor Litigation, (ii) that such distributable value does not fluctuate based on the value of WMI's common stock and (iii) that the numerous Risk Factors contained in the Registration Statement do not indicate that LTWs purportedly faced a risk that the common stock of WMI could become worthless or be canceled in bankruptcy, as WMI seeks to do in its Proposed Plan, thereby rendering the LTWs worthless. Nor did the Risk Factors indicate that the value to be received from the Anchor Litigation was in any way dependent on the value of WMI's common stock - - rather, the opposite was true. As Broadbill has previously pointed out, regardless of whether WMI's common stock is valued or trading at $10.00 per share or $0.001 per share, WMI would be required to convey to LTW Holders the same value from the Anchor Litigation. None of the above described facts and allegations are contingent, and because they

10

must be assumed to be true in a Rule 12(b)(6) Motion, they support Broadbill's request for declaratory relief. Accordingly, WMI's Motion must be denied.

**4. WMI's Argument that the LTW Holders Do Not Have a Direct Right To Participate in the Anchor Litigation Recovery Is Without Merit.**

WMI next argues that Broadbill's action should be dismissed because the LTW Holders do not have a contractual right to participate <u>directly</u> in the recovery from the Anchor Litigation. *See* Motion, at p. 15. WMI's Motion on that basis should likewise be denied because it has once again mischaracterized Broadbill's allegations.

At no point in its Complaint does Broadbill assert a direct right to the proceeds of the Anchor Litigation. Instead, Broadbill's claims stem from, among other things, the breaches of the Amended Agreement. Although the amount of damages attributable to such breach necessarily coincides with the recovery to be received from the Anchor Litigation, it does not follow (and is not the case as a practical matter) that Broadbill has asserted a direct right to participate in the Anchor Litigation recovery. Rather, Broadbill has asserted that the breach under the Amended Agreement of the obligation to "pass along the potential value of [its] claim against the government..." has resulted in a damages claim equal to the amount of value to which the LTW holders are entitled. Complaint, at pp. 7-9

Moreover, even if Broadbill had asserted that the LTW Holders were entitled to participate directly in the Anchor Litigation recovery, WMI's argument would still fail. In its Motion, WMI cites to only two "authorities" in support of its contention that the LTW Holders have no right to the Anchor Litigation proceeds. *See* Motion, at p. 15. First, Debtors quote Section 6.3 of the Amended Agreement, which states: "[WMB] will retain sole and exclusive control of the [Anchor] Litigation and will retain 100% of any recovery from the [Anchor]

11

Litigation." WMI claims that this language "expressly precludes a claim by Broadbill, or any LTW Holder, for payment of 'the net proceeds received for the sale or transfer of the Anchor Litigation...'" and argues that Broadbill's reliance on Section 6.3 of the Amended Agreement to establish a breach as "fanciful." *Id*. Contrary to WMI's allegations, it is WMI that is fancifully suggesting that a provision that delineates and protects the rights of the LTW Holders can somehow be used to preclude the LTW Holders from asserting a claim for breach of that provision.[6] WMI does not bother to explain how a covenant that expressly requires WMB to retain control and the recovery of the Anchor Litigation - - the same covenant that was breached when the Anchor Litigation was transferred to JPMorgan - - would foreclose Broadbill's claim. WMI likewise ignores that the sale or assignment of the Anchor Litigation or the proceeds thereof made a "trigger" under the Amended Agreement an impossibility, which is why a breach of Section 6.3 of the Amended Agreement gives rise to a damages claim.

Next, WMI quotes page 5 of the Registration Statement, which provides that the LTW Holders "have no voting rights, liquidation preferences, and no rights to dividends or distributions other than the right to exercise [their] LTWs to purchase shares of [WMI] common stock, based on the valuation formula, after the occurrence of a trigger." *See* Motion, at p. 15. Again, WMI does not bother to explain how a lack of voting rights, liquidation preferences and rights to dividends or distributions have any relevance to the LTW Holders' contractual entitlement to the value of the net proceeds of the Anchor Litigation. In fact, if anything the

---

[6] In addition, it should be noted that Section 7.8 of the Amended Agreement expressly provides that "[t]he Article, Section and paragraph captions herein are for convenience of reference only, do not constitute part of this Agreement and will not be deemed to limit or otherwise affect any of the provisions hereof."

12

language cited by WMI supports Broadbill's assertion that the LTWs represent claims rather than equity interests (as discussed below).

Finally, all of WMI's arguments in this regard must be denied because they are seeking to adjudicate the merits of the dispute prior to any discovery or without providing the parties with an opportunity to develop a fulsome record to present to the Court. Such relief is not appropriate in the context of a Rule 12(b)(6) motion.

**5.      WMI's Argument That LTWs Constitute "Equity Securities" Is Without Merit and Should Also Be Rejected.**

WMI's final argument is that Broadbill's action must be dismissed because, according to WMI, the LTWs are, as a matter of law, "equity securities" (and by extension, LTW Holders hold equity interests against WMI). As with WMI's other arguments in its Motion, WMI seeks to adjudicate the merits of the case without consideration of contrary factual allegations contained in the Complaint and without an opportunity to develop and present a fulsome record for the Court. [7] WMI's arguments here are, in substance, a "general denial" found in an answer to a complaint. For these reasons alone, the Motion must be denied. WMI's arguments on this point should likewise be denied because they are based on mischaracterizations of Broadbill's claims and have no legal or factual support.

Specifically, WMI's argument that the LTWs constitute equity securities can be separated into three distinct points. First, WMI alleges that because "stock warrants" are "equity securities" the LTWs must also be equity securities. *See* Motion, at pp. 16-17. Second, because

---

[7] For example, WMI dismisses out of hand Broadbill's allegation that the Dime Bancorp board of directors did not intend for the LTWs to be stock warrants, equity securities or equity interests by claiming that Broadbill has "pled no facts to support this conclusory assertion." *See* Motion, at p.18. In making this argument, WMI conveniently ignores other factual statements that Broadbill pled in support of this allegations, including factual statements contained in the Registration Statement and the compensation formula used in the Amended Agreement that would support the assertion that the LTWs were not intended to be equity securities.

"rights to purchase" equity securities are themselves "equity securities," WMI alleges that the LTWs must therefore be equity securities. *See* Motion, at pp. 17-18. Third, according to WMI, the language of the Amended Agreement allegedly makes it evident that the LTWs are equity securities <u>regardless</u> of the intent of DIME and its board of directors in determining to issue the LTWs. In support, WMI cites to various cases involving instruments that bear no resemblance to the LTWs. *See* Motion, at pp. 17-18.[8] In addition, each of WMI's arguments is flawed, and the case law cited by WMI does not support its arguments.

WMI's first argument is that Broadbill failed to plead sufficient facts to state a claim that the LTWs are "claims" rather than "equity securities" because "warrants" constitute "equity securities" under Section 101(16) of the Bankruptcy Code (and pertinent case law). *See* Motion, at p. 16. Broadbill, however, does not dispute (and did not allege otherwise in the Complaint) that Section 101(16) of the Bankruptcy Code defines "equity security" to include "warrants." Unfortunately for WMI, this fact does not support WMI's argument because <u>the LTWs are not "warrants"</u> as that term is used in Section 101(16) of the Bankruptcy Code. A "warrant" is defined as "a contract entitling the holder to purchase *a specified number of shares of stock* for a *specific price* during a *designated time period*." *Reiss v. Financial Performance Corp.*, 764 N.E.2d 958, 960 (NY 2001) (emphasis added); *see also Robert Half International, Inc. v. Franchise Tax Board*, 78 Cal.Rptr.2d 453, 454 (Cal. Ct. App. 1998) (citing Marsh's Cal.

---

[8] WMI cites that "a right to purchase...is within the definition provided in the Bankruptcy Code" of an equity security. *In re Am. W. Airlines, Inc.*, 179 B.R. 893, 897 (Bankr. D. Ariz. 1995) (citations and quotation marks omitted). WMI cites that "[s]tock options...are equity securities." *In re Lawton*, 261 B.R. 774, 777 (Bankr.M.D.Fla. 2001) (citations omitted); *see, e.g. In re Baldwin-United Corp., D.H.*, 52 B.R. 549, 552 (Bankr. S.D. Ohio 1985). WMI also states that a warrant that provides for the purchase of a company's stock falls within the meaning of equity security. *Duel Glass v. Search Fin. Servs., Inc. (In re Search Fin. Servs. Acceptance Corp.)*, Case No. 39832129RCM11, 2000 WL 256889, at *2-4 (N.D. Tex. Mar. 7, 2000). WMI, however, fails to grasp the significant differences between a right to purchase, a stock option, and a warrant in comparison to the LTWs, as further discussed herein.

Corporation Law (3d ed. 1997)) ("A warrant is simply an option to purchase the shares of a corporation at a specified price and for a specified period of time."). The plain language of the LTWs and the Amended Agreement makes it clear that the only similarity the LTWs have with stock warrants is the misnomer associated with them. The LTWs do not contain the three characteristics that define stock "warrants." They are not exercisable for a specified number of shares, they do not contain a specified purchase or exercise price and they have no term. The LTWs are therefore not stock "warrants," and WMI's attempt to dismiss Broadbill's action on such grounds must be denied.

WMI's next argument is that the LTWs represent "rights to purchase" WMI common stock and are therefore "equity securities." *See* Motion, at p. 17-18. A review of the terms of the LTWs makes it clear, however, that the LTWs are not "rights to purchase" securities. The LTWs have no exercise or purchase price. *See* Amended Agreement, at § 3.1. In fact, no consideration whatsoever must be paid by an LTW Holder to realize the value from an LTW. An LTW Holder must simply surrender the LTW to WMI in order to receive the value of the Anchor Litigation recovery. *See* Amended Agreement, at § 3.4. Unlike the LTWs, a true warrant would allow the holder of the warrant to purchase an equity security for a defined purchase price. Here, LTW Holders have no right to "purchase" anything by virtue of their LTW ownership.[9] Rather, LTWs represent the right to receive value upon receipt of payments relating to the Anchor Litigation, including any disposition thereof. As such, the LTWs are not "rights to purchase" equity securities and are not thereby "equity securities." LTWs are instead akin to a financial derivative or a "contingent value right" based on the net proceeds from the Anchor Litigation. Courts have

---

[9] "Purchase" is defined as "[t]he act or an instance of buying." *See* Black's Law Dictionary 1270 (8th ed. 2004).

NYC:212757.11

consistently looked at the substance of a contract over its form and, as such, LTWs should be analyzed to determine their actual contractual (and contextual) attributes rather than simply looking at the name, i.e., the misnomer of a "warrant." *Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519, 524 (N.Y. 1927) ("[f]orm should not prevail over substance and a sensible meaning of words should be sought.").

WMI next argues that the plain language of the Amended Agreement makes it clear that the LTWs are "equity securities" and thus the intent behind their issuance is irrelevant. *See* Motion, at pp. 18-19. These arguments do not support WMI's Motion and should be denied. It is a fundamental tenet of contract law that the terms of a contract must be construed so as to give effect to the intent of the parties as indicated by the language of the contract. *See Slatt v. Slatt*, 488 N.Y.S.2d 645, 646 (1985); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 210 N.Y.S.2d 516, 518 (1961). The Court of Appeals for the Third Circuit has recognized this principle. *See Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999) ("A court's purpose in examining a contract is to interpret the intent of the contracting parties, as they objectively manifest it.")

When the language of the contract is ambiguous, a court can turn to extrinsic evidence of the contracting parties' intent. *See International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 100 (2d Cir.1989); *Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 56, 396 N.E.2d 1029, 1032, 421 N.Y.S.2d 556, 559 (1979). Whether a contract term is ambiguous is a question of law. *See Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987); *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 435 N.E.2d 1075, 1077, 450 N.Y.S.2d 460, 462 (1982). A term is ambiguous when it is "'capable of more than one meaning

when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *See Walk-In Medical*, 818 F.2d at 263 (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y. 1968)). Conversely, "[c]ontract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *See Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989) (quoting *Breed v. Insurance Co. of North America*, 413 N.Y.S.2d 352, 355 (1978)).

WMI's assertion that the language in the Amended Agreement unambiguously supports their assertion that the LTWs are "equity securities" is without legal or factual support. In fact, the language in the Amended Agreement and related documents supports the opposite conclusion. The Registration Statement for the LTWs plainly states that the LTWs are not equity securities, as pled in the Complaint. The Registration Statement, at page 5, states: "[a]n investment in the LTWs involves different risks and considerations from an investment in the common stock of a savings and loan holding company such as Dime Bancorp." In addition, the Risk Factors in the Registration Statement do not mention that the issuer could file for bankruptcy and its common stock would be rendered worthless thereby affecting the value of the LTWs. The Amended Agreement governing the LTWs also does not provide that the LTWs will be rendered worthless or cancelled if WMI's equity is cancelled. Accordingly, the LTWs were not intended to be "equity securities." The stock of WMI was to be used as a currency to convey the value of, or net proceeds from, the Anchor Litigation to LTW Holders unless it was

17

impracticable to do so. In the event of such an impracticability, as appears to be the case here, the intent was "to protect [the] purchase rights" as embodied in the LTWs. *See* Amended Agreement, at § 4.4.

Furthermore, pertinent case law and a review of the terms of the LTWs strongly support the argument that the LTWs are not "equity securities," regardless of whether they are denominated as, or called, "warrants." According to the Third Circuit, the "determinative inquiry" in assessing whether a particular instrument is equity "is the intent of the parties as it existed at the time of the transaction." *In re Submicron Sys. Corp.*, 432 F.3d 448, 457 (3d Cir. 2006). Broadbill has pled factual matters sufficient to show that, at the time of their issuance, the LTWs were not intended to be "equity." *See* Complaint, at ¶ 15 and 16. In particular, Broadbill cited to page 1 of the Registration Statement, which states "[w]hy are we distributing the LTWs? We are distributing the LTWs in an effort to pass along the potential value of our claim against the government to our existing stockholders . . . ," *see* Complaint, at ¶ 15, and page 5 of the Registration Statement, which, as discussed above, states that "[a]n investment in the LTWs involves different risks and considerations from an investment in the common stock of a savings and loan holding company such as Dime Bancorp."

The LTWs also lack fundamental characteristics of "equity securities." The holders of LTWs have no voting or other corporate governance rights that are characteristic of equity securities. Further, as highlighted by WMI in its Motion, the LTWs have no liquidation preferences or rights to dividends or distributions. *See* Motion, at p. 15. Finally, as indicated above, the LTWs do not involve any equity risk, which is the benchmark and at the heart of an equity security. The aggregate value of shares issuable pursuant to the LTWs does not change

NYC:212757.11

upon a change in value of WMI's common stock. Thus, as discussed above, the holder of an LTW receives the exact same value regardless of the price or value of the underlying shares. For example, if WMI common stock had a value, or a trading price, of $.0001 per share, the LTWs would nonetheless be entitled, in the aggregate, to the full net proceeds of the Anchor Litigation, as provided in the Amended Agreement. For these reasons, the LTWs are not equity securities, and WMI's bare allegations to the contrary certainly do not support dismissing the lawsuit based on a Rule 12(b)(6) motion.

## CONCLUSION

WMI's efforts to dismiss Broadbill's action pursuant to Rule 12(b)(6) must be denied. Broadbill has pled facts that are more than sufficient to state the claims for relief specified in its Complaint. Further, even if it were appropriate to argue the merits of Broadbill's arguments in a Rule 12(b)(6) Motion, WMI's arguments as to the substance of Broadbill's claims either mischaracterize (or misunderstand) Broadbill's claims or misstate applicable law and, thus, must fail.

NYC:212757.11

WHEREFORE, Broadbill respectfully requests that this Court (i) deny Debtors' Motion for entry of an order dismissing Broadbill's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (ii) grant such other and further relief as this Court deems just and proper.

Dated: June 7, 2010

COZEN O'CONNOR

_____
Mark E. Felger (No. 3919)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

- and -

ANDREWS KURTH LLP
Paul N. Silverstein (*admitted pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Counsel to Broadbill Investment Corp.*

NYC:212757.11