# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | Case No. 08-12229 (MFW) |
| Debtors. | (Jointly Administered) |
| BROADBILL INVESTMENT CORP., NANTAHALA CAPITAL PARTNERS, LP, AND BLACKWELL CAPITAL PARTNERS, LLC, | |
| Plaintiff, | Adv. Proc. No. 10-50911 (MFW) |
| v. | |
| WASHINGTON MUTUAL, INC., | |
| Defendant. | |

## FIRST AMENDED ANSWER AND COUNTERCLAIM OF DEFENDANT WASHINGTON MUTUAL INC. TO AMENDED COMPLAINT

Washington Mutual, Inc. ("WMI"), as debtor and debtor in possession, and the defendant in this adversary proceeding, hereby submits, by and through its counsel, this First Amended Answer and Counterclaim (the "Amended Answer") to the amended complaint [Docket No. 52] (the "Complaint") filed by Broadbill Investment Corp., Nantahala Capital Partners, LP, and Blackwell Capital Partners, LLC (collectively, the "Plaintiffs").

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104.

## GENERAL DENIAL

Except as otherwise expressly admitted herein, WMI denies each and every allegation in the Complaint, including, without limitation, any allegations contained in the preamble, introduction, prayer, headings, and subheadings of the Complaint. To the extent the allegations in the Complaint seek to impose liability on WMI, they are specifically denied. Pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this action by Rule 7008 of the Federal Rules of Bankruptcy Procedure, averments in the Complaint to which no responsive pleading is required shall be deemed as denied. WMI expressly reserves the right to seek to amend and/or supplement this Amended Answer, as may be necessary.

## SPECIFIC RESPONSES

## PRELIMINARY STATEMENT

1.  This class action for a declaratory judgment relates to the conveyance by Dime Bancorp ("Dime") and its board of directors (the "Dime Board") of the net proceeds, if any, from a litigation entitled *Anchor Savings Bank FSB v. United States*, No. 95-39C (the "Anchor Litigation"). In December 2000, the Dime Board determined to convey the anticipated value from the Anchor Litigation to its shareholders. The Dime Board concluded that the optimal contractual means of conveying such value was through the issuance of what were nominally referred to as "Litigation Tracking Warrants" (the "LTWs"). The LTWs gave holders thereof (the "LTW Holders") the right to payment of the net proceeds from the Anchor Litigation upon a "Trigger" by either (i) issuance of shares of Dime common stock with a market value at the time of issuance (including a discount thereto) that would enable the holder to realize the value of such net proceeds or (ii) payment of such other consideration as would enable the LTW Holders to realize the value of such net proceeds. Following the combination of Dime and WMI, the economic interest in the Anchor

Litigation was transferred to either WMI or Washington Mutual Bank ("WMB"), a subsidiary of WMI. WMI assumed the Dime obligation to convey the value of the net proceeds of the Anchor Litigation to the LTW Holders.

Answer 1. The statements contained in paragraph 1 of the Complaint constitute legal conclusions and therefore require no response. To the extent any answer is required, WMI admits that WMB was previously an indirect subsidiary of WMI, and otherwise denies the allegations contained in paragraph 1 of the Complaint.

2. Structuring the right to payment of the net proceeds from the Anchor Litigation as "LTWs" was not intended to expose the LTW Holders to equity or stock risk but rather to provide them with a direct, contractual claim for the value of the net proceeds of the Anchor Litigation. The terms of the LTWs and the governing Agreements (as defined below) make clear that the Dime Board did not intend for the LTWs to be either stock "warrants," equity securities or equity interests. Among other things, the LTWs are not exercisable into a fixed number of shares and the LTWs do not have an exercise price -- two fundamental and requisite elements of a stock warrant. The LTWs simply provide for the conveyance to the LTW Holders of the right to payment of the value of any recovery in the Anchor Litigation.

Answer 2. The statements contained in paragraph 2 of the Complaint constitute legal conclusions and therefore require no response. To the extent any answer is required, WMI denies the allegations contained in paragraph 2 of the Complaint.

3. Section 6.3 1 of the Amended Agreement (as defined below) provides that WMB was to retain sole and exclusive control over the Anchor Litigation and 100% of any recovery therefrom. That provision and other provisions of the Amended Agreement were, or will be, breached as a consequence of (a) the sale or transfer, or the contemplated sale or transfer, of the recovery from the Anchor Litigation and the control thereof to JPMorgan Chase Bank, N.A. ("JPMorgan") for value and (b) the failure of WMI to

> ensure that JPMorgan assumed, or will assume, WMI's obligations to the LTW holders.2 The LTW Holders have been deprived of, among other things, the value of the purchase price paid or to be paid by JPMorgan for the Anchor Litigation.

Answer 3. WMI denies each and every allegation in paragraph 3 of the Complaint, and further states that that certain Amended and Restated Warrant Agreement, dated January 7, 2002 (as amended, the "Amended Agreement"), to which paragraph 3 refers speaks for itself, and WMI respectfully refers the Court to the contents of that document for the terms thereof.

> 4. Section 4.4 of the Amended Agreement protects the rights of the LTW Holders by providing that if an "event" occurs that would frustrate WMI's ability to use its common stock as a currency to convey to the LTW Holders payment of the net proceeds of the Anchor Litigation, WMI must nonetheless fulfill the intent of the Agreements by providing payment of such value to the LTW Holders by alternative means.

Answer 4. WMI denies each and every allegation in paragraph 4 of the Complaint, and further states that the Amended Agreement to which paragraph 4 refers speaks for itself, and WMI respectfully refers the Court to the contents of that document for the terms thereof.

> 5. By this action, Plaintiffs seek, *inter alia*, declaratory relief on behalf of themselves and all members of the Class (as defined below) that: (i) the sale and transfer of control over, and the recovery from, the Anchor Litigation to JPMorgan constitute a breach and default under the Amended Agreement, which gives rise to a claim in favor of the LTW Holders for WMI's failure to provide the LTW Holders with the proceeds from such sale and transfer; (ii) if WMI's existing common stock is to be extinguished or cancelled, Section 4.4 of the Amended Agreement mandates that the LTW Holders have claims against WMI

in the amount of the net proceeds of the Anchor Litigation;
(iii) the LTWs do not constitute either stock warrants,
equity securities or equity interests in WMI; and (iv) the
LTWs represent the "right to payment" of value and are
"claims" against WMI's estate.

Answer 5. Paragraph 5 of the Complaint contains a request for relief, rather than an allegation of fact. To the extent that a response is required, WMI denies each and every allegation in Paragraph 6 of the Complaint and denies that Plaintiffs are entitled to any relief.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this adversary
proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

Answer 6. Paragraph 6 of the Complaint contains conclusions of law to which no responsive pleading is required; however, WMI admits that this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

7. Venue is proper in this District pursuant to 28 U.S.C.
§ 1409(a). This action constitutes a core proceeding
pursuant to 28 U.S.C. § 157(b)(2). This adversary
proceeding is commenced pursuant to 11 U.S.C. § 105, 28
U.S.C. § 2201 and applicable law of the State of New
York.

Answer 7. Paragraph 7 of the Complaint contains conclusions of law to which no responsive pleading is required; however, WMI admits that venue is proper pursuant to 28 U.S.C. § 1409(a).

# PARTIES

## I.    **Plaintiffs**

> 8. Plaintiff Broadbill Investment Corp. ("Broadbill") is a corporation organized under the laws of the State of Florida, with its principal place of business in Florida.

> 9. Plaintiff Nantahala Capital Partners, LP ("Nantahala") is a limited partnership organized under the laws of the State of Massachusetts, with its principal place of business in Connecticut.

> 10. Plaintiff Blackwell Capital Partners, LLC ("Blackwell") is a limited liability company organized under the laws of the State of Georgia, with its principal place of business in Connecticut.

Answers 8-10. WMI is without sufficient information to admit or deny the allegations in paragraphs 8-10 of the Complaint, and therefore denies the allegations in paragraphs 8-10.

> 11. Plaintiffs and each member of the Class (defined below) are beneficial holders and owners of LTWs.

Answer 11. WMI is without sufficient information to admit or deny the allegations in paragraph 11 of the Complaint, and therefore denies the allegations therein.

## II.    **Defendant(s)**

> 12. Defendant WMI is, upon information and belief, a corporation organized under the laws of the State of Delaware.

Answer 12. WMI denies each and every allegation in paragraph 12 of the Complaint.

## CLASS ACTION ALLEGATIONS

> 13. Plaintiffs brings their claims individually and as a collective action on behalf of a class (the "Class") defined as "All parties that hold (or hereafter acquire) Litigation

Tracking Warrants that were originally issued by Dime Bancorp on December 22, 2000 and relate to the litigation entitled *Anchor Savings Bank FSB* v. *United States,* No. 95-39C." Collective action treatment is appropriate because Plaintiffs and all members of the Class are similarly situated with respect to the LTWs and their substantive rights against WMI are identical.

14. The Class, as defined in paragraph 13, is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown to Plaintiffs, upon information and belief, there are at least several hundred members of the Class.

15. Common, *i.e.,* identical, questions of law and fact exist with respect to Plaintiffs and the members of the Class, including, but not limited to:

(i) whether the sale and transfer of control over, and the recovery from, the Anchor Litigation to JPMorgan constitutes a breach and default under the Amended Agreement which gives rise to a claim in favor of the LTW Holders for WMI's failure to provide the LTW Holders with the proceeds from such sale and transfer;

(ii) whether Section 4.4 of the Amended Agreement mandates that the LTW Holders have claims against WMI in the amount of the net proceeds of the Anchor Litigation, if WMI's existing common stock is to be extinguished or cancelled;

(iii) whether the LTWs constitute either stock warrants, equity securities or equity interests in WMI;

(iv) whether the LTWs represent the "right to payment" of value (not necessarily by issuance of WMI common stock) and are "claims" against WMI's estate.

16. Plaintiffs' claims are typical of those of the Class. Plaintiffs are members of the Class they seek to represent.

17. Plaintiffs and their respective undersigned counsel have, in effect, been representing the interests of the entire Class since the filing of the initial complaint in this action

and will fairly and adequately protect the interests of the Class. Plaintiffs' interests are in no way antagonistic to the interests of other members of the Class. Plaintiffs have retained counsel competent and experienced in complex civil litigation and bankruptcy matters.

18. Concentrating all potential litigation concerning the rights of members of the Class in the above captioned proceeding will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve judicial resources and the resources of the parties, and is the most efficient means of resolving the rights of members of the Class. Specifically, because the LTWs are publicly traded through the Depository Trust & Clearing Corporation ("DTC"), resolution of the above captioned proceeding should be determinative with respect to issues relating to the LTWs (including, without limitation, issues relating to filing individual proofs of claim with respect to the LTWs).

19. Certification of the Class pursuant to Rule 23(b)(1) is appropriate because an adjudication with respect to Plaintiffs' claims would as a practical matter be dispositive of the interests of the other members of the Class that are not parties to the above captioned proceeding. Additionally, certification of the Class pursuant to Rule 23(b)(2) is appropriate because WMI has in the past refused to act on grounds generally applicable to the Class, thereby making final declaratory relief with respect to the Class as a whole appropriate.

20. Payment by Defendant of the costs associated with the above captioned proceeding, including, without limitation, reasonable fees, expenses and disbursements of Plaintiffs' counsel (including the cost of noticing all Class members through DTC, *i.e.,* record ownership), is appropriate because (i) Defendant has agreed to the filing of this Amended Complaint and the treatment of the above captioned proceeding as a class action, and (ii) placing the significant financial burden of litigating a class action on Plaintiffs would be inappropriate under the circumstances.

Answers 13-20. WMI denies each and every allegation in paragraphs 13-20, and informs the Court that the Debtors and counsel for the Plaintiffs currently are negotiating a stipulation that will address issues related to certification of the putative class.

## FACTS

### III. Background

#### A. The Anchor Litigation

21. Between 1982 and 1985, Anchor Savings Bank FSB ("Anchor FSB") acquired eight failing savings and loan institutions, the deposits of which were insured by the Federal Savings and Loan Insurance Corporation (the "FSLIC"). In acquiring such institutions, Anchor FSB assumed liabilities determined to exceed the assets it acquired by over $650 million in the aggregate. The difference between the fair values of the assets acquired and the liabilities assumed in such transactions was recorded on Anchor FSB's books as "goodwill." At the time of these acquisitions, the FSLIC had agreed that Anchor FSB, among other things, could include such "goodwill" in its regulatory capital.

22. When the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") was enacted, Anchor FSB still had over $500 million of regulatory capital from supervisory acquisitions on its books, including the "goodwill" described in paragraph 21 above. FIRREA, however, required the remaining supervisory goodwill to be eliminated immediately for purposes of calculating tangible capital and to be phased out through December 31, 1994 for other regulatory capital purposes. The elimination of the supervisory goodwill and other components of regulatory capital damaged Anchor FSB by creating severe limitations on its activities and requiring the sale of valuable assets under liquidation-like circumstances[.]

23. On January 13, 1995, Anchor FSB filed a lawsuit (the "Anchor Litigation") against the United States government in the United States Court of Federal Claims (captioned

*Anchor Savings Bank FSB* v. *United States,* No. 95-39C),
alleging breach of contract and taking of property without
compensation in contravention of the Fifth Amendment to
the United States Constitution. Shortly after the Anchor
Litigation was commenced, Dime acquired Anchor and The
Dime Savings Bank ofNew York, FSB ("Dime FSB")
acquired Anchor FSB. In connection therewith, the Anchor
Litigation was transferred to either Dime or Dime FSB. On
January 4, 2002, Dime FSB merged into WMB and either
WMB or WMI assumed the rights under the Anchor
Litigation. WMI assumed Dime's obligations under the
LTWs and the Original Agreement (as defined below).

24. On March 14, 2008, the U.S. Court of Federal Claims
issued an order and findings that Anchor was entitled to
damages for the lost profits and awarded additional
damages. The Court's order and findings concluded that
Anchor FSB had incurred recoverable damages in the
amount of approximately $382 million, plus an
undetermined amount for a grossup of Anchor FSB's tax
liabilities. On July 16, 2008, the Court reduced the
judgment to approximately $356 million. On March 10;
2010, the Federal Circuit Court of Appeals affirmed the
judgment of approximately $356 million, and also
remanded the case to the Court of Federal Claims for
further determination of whether that court had made a
calculation error and should increase the damage award by
as much as an additional $63 million.

Answers 21-24. WMI denies each and every allegation contained in paragraphs 21-24 of

the Complaint, and respectfully submits that this adversary proceeding is tangentially

related to that certain litigation styled *Anchor Savings Bank, FSB v. United States* (the

"Anchor Litigation"), Case No. 95-39C (Fed. Cl.), pending before the Honorable

Lawrence J. Block in the United States Court of Federal Claims, commenced by Anchor

Savings Bank, FSB against the United States of America, and respectfully refers to the

pleadings filed in the Anchor Litigation for their contents.

**B.    The LTWs**

25. On December 22, 2000, Dime distributed LTWs to holders of outstanding shares of its common stock. The LTWs were registered under a registration statement dated. December 15, 2000 (as amended, the "Registration Statement") and were issued pursuant to an agreement referred to as a Warrant Agreement (the "Original Agreement"), dated as of December 21, 2000, by and among Dime, EquiServe Trust Company, N.A. and EquiServe Limited Partnership (as agents). On January 4, 2002, Dime merged into WMI and WMI assumed Dime's obligations under the LTWs. On March 11, 2003, WMI and Mellon Investor Services LLC entered into the 2003 Amended and Restated Warrant Agreement (the "Amended Agreement" and together with the Original Agreement, individually and collectively, the "Agreements"), which amended and restated the terms of the Original Agreement. The LTW Certificates incorporate the terms and conditions of the then applicable Agreement.

Answer 25.   WMI denies each and every allegation contained in paragraph 25 of the Complaint, and respectfully refers to the Original Agreement,[2] the Amended Agreement, and to the registration statement, dated October 20, 2000 (as amended on December 15, 2000, the "Registration Statement"), for their contents.  WMI further alleges that, on December 22, 2000, pursuant to the Original Agreement, Dime Bancorp, Inc. distributed litigation tracking warrants (the "LTWs") to its then current shareholders.  The LTWs were registered pursuant to the Registration Statement.

26. The Registration Statement plainly states that the intent in issuing, and the principles underlying the issuance of, the LTWs was to pass the value of the net proceeds of the Anchor Litigation to the LTW Holders. The Registration Statement, at page 1, states: "Why are we distributing the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Complaint.

LTWs? We are distributing the LTWs *in an effort to pass along the potential value of our claim against the government to our existing stockholders . ...*" (Emphasis added.)

Answer 26. WMI denies each and every allegation contained in paragraph 26 of the

Complaint, and further states that the Registration Statement to which paragraph 26 refers

speaks for itself, and WMI respectfully refers the Court to the contents of that document

for the terms thereof.

> 27. The Registration Statement also is clear that the LTWs are not stock warrants, equity securities or equity interests. The Registration Statement, at page 5, states: "An investment in the LTWs involves different risks and considerations from an investment in the common stock of a savings and loan holding company such as Dime Bancorp."

Answer 27. WMI denies each and every allegation contained in paragraph 27 of the

Complaint, and further states that the Registration Statement to which paragraph 27 refers

speaks for itself, and WMI respectfully refers the Court to the contents of that document

for the terms thereof.

### C.    The Sale to JPMorgan and the Debtors' Proposed Plan

> 28. On September 25, 2008, the FDIC was appointed as a receiver for WMB and immediately took possession of WMB's assets. The FDIC promptly sold substantially all the assets of WMB (allegedly including the recovery from the Anchor Litigation and control thereof) to JPMorgan in exchange for payment of $1.88 billion and the assumption of all of WMB's deposit liabilities.

Answer 28. WMI denies each and every allegation in paragraph 28 of the Complaint,

and respectfully refers to page 2 of the Debtors' *Disclosure Statement for the Fifth*

*Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States*

*Bankruptcy Code*, dated July 1, 2010 (the "Disclosure Statement") for a recitation of the facts regarding the allegations in paragraph 28.

> 29. On September 26, 2008, WMI and WMI Investment Corp. (the "Debtors") each commenced a Chapter 11 case with this Court. On March 26, 2010, the Debtors filed a proposed Chapter 11 plan (as thereafter amended and supplemented, the "Proposed Plan"). Section 24.1 of the Proposed Plan provides that the LTW Holders shall receive no distribution under the Proposed Plan and the LTWs shall be deemed to be extinguished and canceled on the Effective Date (as defined in the Proposed Plan). Section 25.1 of the Proposed Plan provides that holders of WMI common stock shall receive no distribution under the Proposed Plan and the shares of WMI common stock shall be deemed to be extinguished and canceled on the Effective Date.

Answer 29. WMI admits to the allegations in the first two sentences of paragraph 29.

WMI denies the remaining allegations in paragraph 29 of the Complaint, and respectfully refers to the Debtors' *Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated July 1, 2010 (the "Plan"), for a description of the proposed treatment of the LTWs pursuant to the Plan.

## FIRST CAUSE OF ACTION

### Declaratory Judgment (Breach of Section 6.3 of the Amended Agreement)

> 30. Plaintiffs repeat and reallege all of the preceding allegations of this Amended Complaint as though set forth fully herein.

Answer 30. WMI incorporates by reference its responses to the allegations contained in paragraphs 1-30 of the Complaint.

> 31. Section 6.3 of the Amended Agreement requires WMB to retain control over and ownership of the recovery from

> the Anchor Litigation for the benefit of the LTW Holders;
> "[WMB] will retain sole and exclusive control of the
> [Anchor] Litigation and will retain 100% of any recovery
> from the [Anchor] Litigation."

Answer 31. WMI denies each and every allegation contained in paragraph 31 of the

Complaint, and further states that the Amended Agreement to which paragraph 31 refers

speaks for itself, and WMI respectfully refers the Court to the contents of that document

for the terms thereof.

> 32. Section 6.3 of the Amended Agreement exists to
> protect the LTW Holders from the sale or transfer of the
> Anchor Litigation which would eliminate or avoid the
> occurrence of a Trigger and thereby frustrate the intent and
> purpose of the LTWs and the Agreements.

Answer 32. WMI denies each and every allegation in paragraph 32 of the Complaint,

and further states that the Amended Agreement to which paragraph 32 refers speaks for

itself, and respectfully refers the Court to the contents of the Amended Agreement for the

terms thereof.

> 33. In or about September 2008, the FDIC, in its capacity
> as receiver for WMB, sold to JPMorgan substantially all of
> WMB's assets, including, allegedly, control over and any
> recovery from the Anchor Litigation. The receipt of
> proceeds or value from the sale or transfer of the Anchor
> Litigation should be deemed as a "Trigger" event under the
> Amended Agreement; otherwise, such sale or transfer
> would have made the occurrence of a "Trigger" (as defined
> in the Agreements) an impossibility. Upon receipt of such
> value for the Anchor Litigation, WMI should have taken
> the necessary steps to consummate a Trigger. For instance,
> in September 2008, WMI could have issued shares of
> common stock to the LTW Holders with a market value, at
> the time of such issuance, that would have enabled the
> LTW Holders immediately to realize the value, and obtain
> payment, of such net proceeds. That would have then

> allowed the LTW Holders to receive the benefit of their
> bargain under the LTWs upon the sale of such shares.

Answer 33. WMI denies each and every allegation contained in paragraph 33 of the

Complaint, and further states that the Amended Agreement to which paragraph 33 refers

speaks for itself, and WMI respectfully refers the Court to the contents of that document

for the definition of "Trigger."

> 34. Section 6.3 of the Amended Agreement was breached
> when control over, and any recovery from, the Anchor
> Litigation was allegedly sold to JPMorgan. The LTW
> Holders were then entitled to receive the value of the net
> proceeds on account of such sale or transfer to JPMorgan in
> the fonn of either (i) shares of WMI common stock in an
> amount then having a market value that would have
> enabled the LTW Holders to immediately realize payment
> of such net proceeds (given that at the time of the sale
> and/or transfer, and to date, there was, and continues to be,
> an active, liquid and robust $1 billion plus market for WMI
> common stock) or (ii) such other equivalent consideration
> or value.

Answer 34. WMI denies each and every allegation in paragraph 34 of the Complaint,

and further states that the Amended Agreement to which paragraph 34 refers speaks for

itself, and respectfully refers the Court to the contents of the Amended Agreement for the

terms thereof.

> 35. As a consequence of the foregoing, the LTW Holders
> are entitled to a claim for damages against WMI resulting
> from WMI's failure to provide the LTW Holders with the
> value of the net proceeds received for the alleged sale or
> transfer of the Anchor Litigation to JPMorgan.

Answer 35. WMI denies each and every allegation in paragraph 35 of the Complaint.

# SECOND CAUSE OF ACTION

## Declaratory Judgment (Section 4.4 Amended Agreement)

36. Plaintiffs repeat and reallege all of the preceding allegations of this Amended Complaint as though set forth fully herein.

Answer 36. WMI incorporates by reference its responses to the allegations contained in paragraphs 1-35 of the Complaint.

37. Defendant has proposed a Chapter 11 plan that would eliminate and cancel all of WMI's common stock which, if confirmed, would make it impossible for WMI to pay to the LTW Holders the value of the net proceeds of the Anchor Litigation in WMI common stock.

Answer 37. WMI denies each and every allegation in paragraph 37 of the Complaint.

38. Section 4.4 of the Agreements provides: "If any event occurs as to which the foregoing provisions of this Article IV are not strictly applicable or, if strictly applicable, would not, in the good faith judgment of the Board, fairly and adequately protect the rights of the Holders of the LTWs in accordance with the essential intent and principles of such provisions, then the Board may make, without the consent of the Holders, such adjustments to the terms of this Article IV, in accordance with such essential intent and principles, as will be reasonably necessary, in the good faith opinion of such Board, to protect such purchase rights as aforesaid."

Answer 38. WMI denies each and every allegation contained in paragraph 38 of the Complaint, and further states that the Amended Agreement to which paragraph 38 refers speaks for itself, and WMI respectfully refers the Court to the contents of that document for the terms thereof.

39. Cancellation of WMI's common stock would be an "event" within the meaning of Section 4.4 of the

Agreements. WMI and its Board must therefore act to protect the rights of the LTW Holders.

Answer 39.  WMI denies each and every allegation in paragraph 39 of the Complaint.

40. The "essential intent and principles" referred to in Section 4.4 of the Agreements is for the LTW Holders to be paid the net proceeds of the Anchor Litigation.

Answer 40.  WMI denies each and every allegation in paragraph 40 of the Complaint.

41. Thus, under Section 4.4 of the Amended Agreement, if WMI's common stock is to be cancelled, WMI and its Board of Directors must allow an unsecured claim in WMI's Chapter 11 case in favor of the LTW Holders in an amount equal to the net proceeds of the Anchor Litigation.

Answer 41.  WMI denies each and every allegation in paragraph 41 of the Complaint, and further states that the Amended Agreement to which paragraph 41 refers speaks for itself, and respectfully refers the Court to the contents of the Amended Agreement for the terms thereof.

## THIRD CAUSE OF ACTION

### Declaratory Judgment (The LTWS Are Not Stock Purchase Warrants, Equity Securities or Equity Securities)

42. Plaintiffs repeat and reallege all of the preceding allegations of this Amended Complaint as though set forth fully herein.

Answer 42.  WMI incorporates by reference its responses to the allegations contained in paragraphs 1-41 of the Complaint.

43. The terms of the LTWs and the Agreements make clear that the Dime Board did not intend for the LTWs to be stock warrants, equity securities or equity interests. In fact, as a matter of law, the LTWs are not stock warrants, equity securities or equity interests. Among other things, the LTWs are not exercisable into a fixed number of shares and

the LTWs do not have an exercise price -- two fundamental
and requisite elements of a stock warrant.

Answer 43. WMI denies each and every allegation in paragraph 43 of the Complaint.

44. Further, because the aggregate value of shares issuable
pursuant to the LTWs does not change upon a change in
value of WMI's common stock, the LTWs do not contain
the hallmark characteristic of equity -- equity risk. The
holder of an LTW receives the exact same value from an
LTW regardless of the value of the underlying shares. For
example, if WMI common stock had a value, or a trading
price, of $.0001 per share, the LTWs would nonetheless be
entitled, in the aggregate, to the full net proceeds of the
Anchor Litigation.

Answer 44. WMI denies each and every allegation in paragraph 44 of the Complaint.

45. Accordingly, this Court should determine that the
LTWs constitute claims against WMI and not stock
purchase warrants, equity securities or equity interests.

Answer 45. WMI denies each and every allegation in paragraph 45 of the Complaint.

## FOURTH CAUSE OF ACTION

### Declaratory Judgment (The LTWS Represent the Right to Payment of Value and Constitute a Claim Against WMI)

46. Plaintiffs repeat and reallege all of the preceding
allegations of this Amended Complaint as though set forth
fully herein.

Answer 46. WMI incorporates by reference its responses to the allegations contained in

paragraphs 1-45 of the Complaint.

47. The LTWs are "claims" - - they represent a "right to
payment" of the value of the net proceeds of the Anchor
Litigation and not merely a right to receive WMI common
stock. Structuring the right of the LTW Holders to receive
the net proceeds of the Anchor Litigation in such a manner
was not intended to expose the LTW Holders to equity risk
- - but, rather, was intended to provide the LTW Holders

with a direct, contractual claim for the value represented by the Anchor Litigation.

Answer 47. WMI denies each and every allegation in paragraph 47 of the Complaint.

> 48. That WMI may be incapable of delivering to the LTW Holders value in the form of existing WMI common stock (given that such stock may be extinguished under a proposed Chapter 11 plan for WMI) does not extinguish WMI's obligation under the LTWs and the Amended Agreement to provide the LTW Holders with the value of the net proceeds of the Anchor Litigation. Among other things, the Amended Agreement's use of a formula based on trading values upon issuance (less a liquidity discount) demonstrates that the LTW Holders are entitled to receive payment of a specific and defined amount equal to the net proceeds of the Anchor Litigation. It is not a mere mistake or error that absent from the numerous Risk Factors in the Registration Statement under which the LTWs were issued is any mention of the possibility that the issuer could file for bankruptcy and its common stock could thereby be rendered worthless.

Answer 48. WMI denies each and every allegation in paragraph 48 of the Complaint.

> 49. Accordingly, the LTW Holders are entitled to an allowed claim against WMI in the amount equal to the net proceeds of the Anchor Litigation.

Answer 49. WMI denies each and every allegation in paragraph 49 of the Complaint.

## ANSWER TO PRAYER FOR RELIEF

WMI denies that the Plaintiffs are entitled to the relief requested or to any relief, and WMI denies all allegations of the Complaint except as specifically admitted herein.

## DEFENSES, AFFIRMATIVE DEFENSES, AND RESERVATION OF RIGHTS

The statement of any defense hereinafter does not assume the burden of proof for any issue as to which applicable law places the burden upon the Plaintiffs.

WMI expressly reserves the right to assert, and hereby gives notice that it intends to rely upon, any other defense and/or affirmative defense that may become available or appear during discovery proceedings or otherwise in this case and hereby reserves the right to amend this Answer to assert any such defense and/or affirmative defense. WMI hereby incorporates into this Amended Answer and asserts any and all defenses asserted or pled in this proceeding by any other party to the extent the defenses are applicable to WMI under the facts and law.

WMI has not knowingly or intentionally waived any applicable affirmative defenses. WMI presently lacks sufficient knowledge or information on which to form a belief as to whether it may have, as yet unstated, defenses or affirmative defenses, and expressly reserves all rights with respect to all defenses or affirmative defenses that may be revealed during the course of discovery.

WMI asserts the following affirmative defenses, without assuming the burden of proof when the burden of proof would otherwise be on the Plaintiffs:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs lack standing, in whole or in part, to bring the claims asserted in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the parol evidence rule.

## EIGHTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred, in whole or in part, by the Plaintiffs' failure to mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the Plaintiffs' failure to exhaust their contractual remedies.

## TENTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the Plaintiffs' failure to set forth a basis for their attorneys' fees.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the Plaintiffs' failure to timely file proofs of claim.

## TWELFTH AFFIRMATIVE DEFENSE

The claims against WMI in this Complaint are barred by the failure of a condition precedent.

## THIRTEENTH AFFIRMATIVE DEFENSE

WMI reserves its right to raise affirmative defenses as they become known through discovery or otherwise, and hereby reserves the right to amend its answer and affirmative defenses to assert any such defense.

## COUNTERCLAIM

For its counterclaim against Plaintiffs, defendant WMI alleges as follows:

1.      This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this Court under 28 U.S.C. § 1409.

3.      Plaintiffs allegedly are holders of LTWs.

4.      Counts I-IV of the Complaint seek declaratory and equitable relief to the effect that Plaintiffs are entitled to claims against the Debtors' estates for, *inter alia*, an alleged breach of the Amended Agreement.

5.      Section 101(5) of the Bankruptcy Code provides that a "claim" is a "right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment . . . ." 11 U.S.C. § 101(5).

7.     Plaintiffs assert "claims" against WMI in Counts I-IV of the Complaint.

8.     Plaintiffs' asserted claims are based upon securities that the Plaintiffs purportedly hold, namely, the LTWs, which are – subject to the terms of the Amended Agreement, including the occurrence of certain conditions precedent that still have not occurred as of the date hereof – exercisable for shares of WMI common stock.

9.     Plaintiffs in Counts I-IV of the Complaint assert claims for damages arising from the purchase or sale of securities.

10.     WMI denies any and all liability on Counts I-IV of the Complaint, but should the Court find that Plaintiffs are entitled to any relief, Plaintiffs' claims are subject to mandatory subordination to all claims or interests that are senior to or equal to WMI's common equity interests in accordance with section 510(b) of the Bankruptcy Code.

WHEREFORE, on its Counterclaim, WMI prays for judgment ordering that any claims asserted by Plaintiffs against WMI are subordinated to all claims or interests that are senior to or equal to WMI's common equity interests.

WHEREFORE, WMI further prays as follows:

1.  That the Complaint and each cause of action therein be dismissed with prejudice;

2.  That Plaintiffs take nothing by way of the Complaint;

3.  That WMI be awarded costs of suit and attorney's fees herein; and

4.  That the Court order such other and further relief for WMI as the Court may deem just and proper.

Respectfully submitted,

Dated: September 24, 2010
Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION