**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., et al., | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| BROADBILL INVESTMENT CORP. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-50911 (MFW) |
| | ) | |
| WASHINGTON MUTUAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**OPINION[1]**

Before the Court is the Motion for Summary Judgment filed by Washington Mutual, Inc. ("WMI") in the above-captioned adversary. For the reasons stated below, the Court will deny the motion for summary judgment, finding that there are genuine issues of material fact in dispute.

I. <u>BACKGROUND</u>

On July 6, 1994, Anchor Savings Bank, FSB ("Anchor") and Dime Bancorp, Inc. ("DBI") entered into an agreement to merge.

---

[1]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

(See A.D.I. # 70 at Ex. I.)[2]  In early 1995, Anchor commenced a lawsuit against the federal government alleging breach of contract and taking of property without compensation as a result of the statutory change in treatment of supervisory goodwill that Anchor had previously realized when it acquired certain failing savings and loan associations (the "Anchor Litigation").  (Id. at Ex. G.)  As a result of the merger with Anchor, DBI became entitled to the proceeds, if any, from the Anchor Litigation.  On December 22, 2000, DBI issued to its shareholders litigation tracking warrants ("LTWs") tied to the Anchor Litigation pursuant to a Warrant Agreement and Registration Statement filed on October 20, 2000.  (Id. at Exs. H & P.)

On January 4, 2002, DBI merged with WMI.  (Id. at Exs. I & Q.)  WMI was a savings and loan holding company, which held, inter alia, all of the stock of Washington Mutual Bank ("WMB"). The Warrant Agreement was subsequently modified in an Amended Warrant Agreement dated March 11, 2003, between WMI and the agent for the LTW Holders.  (Id. at Ex. R.)  Pursuant to the Amended Warrant Agreement, WMB was to prosecute and control the Anchor Litigation and, upon a trigger, the LTW Holders were entitled to common stock of WMI.  (Id. at Ex. R, §§ 3.5 & 6.3.)

---

[2]  References to the record are as follows: "A.D.I. #" are references to the docket number of documents filed in the adversary proceeding; "D.I. #" are references to the docket number of documents filed in the main bankruptcy case.

The Court of Federal Claims ultimately entered judgment in favor of the plaintiffs in the Anchor Litigation in the amount of $356 million on July 17, 2008. (Id. at Ex. S.) Cross appeals were filed. (Id. at Exs. T & U.) On March 10, 2010, the Court of Appeals for the Federal Circuit affirmed the ruling of the Court of Federal Claims in part and remanded for further determination of damages, suggesting that the damages award be increased by $63 million. (See A.D.I. # 87 at Ex. K.) The Court of Federal Claims has not ruled yet on the remand (or on the government's recent motion to dismiss).

In the interim, on September 25, 2008, the Office of Thrift Supervision ("OTS") seized WMB and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver. Immediately after its appointment as receiver, the FDIC sold substantially all of the assets of WMB to JPMorgan Chase Bank, N.A. ("JPMC") for approximately $1.8 billion and assumption of certain of WMB's liabilities. (Id. at Ex. V.) On September 26, 2008, WMI filed a voluntary petition under chapter 11 of the Bankruptcy Code, together with its affiliate WMI Investment Corp.

On April 12, 2010, Broadbill Investment Corp. filed an adversary complaint seeking a declaratory judgment relating to the rights of the LTW Holders. (A.D.I. # 1.) On June 30, 2010, the Court approved a stipulation allowing Nantahaha Capital Partners LP and Blackwell Capital Partners, LLC to intervene as

3

plaintiffs.  (A.D.I. # 27.)

On June 16, 2010, WMI filed the Forty-Third and Forty-Fourth Omnibus Objections to claims contending that proofs of claims filed by some of the LTW Holders were really equity interests not claims and/or should be subordinated pursuant to section 510(b). WMI sought to stay the adversary proceeding pending determination of the omnibus objections to the LTW Holders' claims.  This was opposed because some LTW Holders had not filed claims or intervened in the adversary.

Because the issues raised in the Broadbill adversary were similar to those raised in the omnibus objection to claims and because the resolution of the omnibus objection would not decide the issue for all LTW Holders, the Court suggested that the Complaint be amended to serve as a class action on behalf of all LTW Holders.  As a result, the Broadbill Complaint was amended on September 3, 2010, as a class action on behalf of all the LTW Holders.  (A.D.I. # 52.)

On September 24, 2010, WMI filed an amended answer and counterclaim (asserting that, if the Court determines that the LTW Holders have any claims, they should be subordinated pursuant to section 510(b)).  (A.D.I. # 57.)  A response to the counterclaim was filed by the LTW Holders on October 15, 2010. (A.D.I. # 61.)  On October 29, 2010, WMI filed a motion for summary judgment on the Amended Complaint.  (A.D.I. # 68.)  A

4

notice of completion of briefing on WMI's Motion for Summary

Judgment was filed on November 22, 2010.  (A.D.I. # 90.)  Oral

argument on the Motion was heard on December 1, 2010,[3] and the

matter is ripe for decision.


II.  JURISDICTION

    This Court has jurisdiction over this adversary, which is a

core proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A),

(B), ©), (M) & (O).


III. DISCUSSION

    A.    Standards for Summary Judgment

    Rule 7056 of the Federal Rules of Bankruptcy Procedure

incorporates Rule 56 of the Federal Rules of Civil Procedure in

adversary proceedings.

    In considering a motion for summary judgment under Rule 56,

the court must view the inferences from the record in the light

most favorable to the non-moving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Wagner Mining

---

    [3]  Oral argument on the summary judgment motion was held on
the first day of the confirmation hearing on the Debtors' Sixth
Amended Joint Plan of Reorganization because the issues raised in
the LTW Adversary might impact confirmation and because the LTW
Holders had filed an objection to confirmation premised largely
on what reserve, if any, needed to be established for the
disputed claims of the LTW Holders.  Contemporaneously herewith,
the Court is denying confirmation and determining the amount of
the reserve for the LTW Holders must be set at $334 million.

Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).  If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, then the court shall enter judgment in the movant's favor.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Group, Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007).  A fact is material when it could "affect the outcome of the suit."  Anderson, 477 U.S. at 248.

Once the moving party has established a prima facie case in its favor, the non-moving party must go beyond the pleadings and point to specific facts showing more than a scintilla of evidence that there is a genuine issue of fact for trial.  See, e.g., Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).  If the moving party offers only speculation and conclusory allegations in support of its motion, the burden is not met.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  Therefore, when the court

6

determines that the non-moving party has presented no genuine issue of disputed fact, summary judgment may be granted.  See Matsushita, 475 U.S. at 587.

In breach of contract cases under New York law,[4] summary judgment is appropriate when the moving party establishes that the plain and unambiguous language of the contract supports its interpretation of the agreement.  See, e.g., Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp., 310 F. Supp. 2d 556, 568 (S.D.N.Y. 2003); Abramo v. HealthNow New York, Inc., 23 A.D.3d 986, 987 (N.Y. App. Div. 2005).

B.    Issues Raised by the LTW Adversary

In Count 1 of the Complaint the LTW Holders contend that WMI breached section 6.3 of the Amended Warrant Agreement by permitting the transfer of control of (and any recovery from) the Anchor Litigation to JPMC.[5]  Count 2 of the Amended Complaint seeks a declaratory judgment that under Section 4.4 of the

---

[4]  The Amended Warrant Agreement provides that New York law applies.  (A.D.I. # 70 at Ex. R, § 7.4.)

[5]  Section 6.3 of the Amended Warrant Agreement provides: The Bank will retain sole and exclusive control of the Litigation and will retain 100% of any recovery from the Litigation.  The [LTW] Holders will not have any right to control or manage the course or disposition of the Litigation or the proceeds of any recovery therefrom or any rights against [WMI] for any decision regarding the conduct of the Litigation or disposition of the Litigation for an amount less than the amount claimed in damages in the Litigation, regardless of the effect on the value of the Warrants.
(A.D.I. # 70 at Ex. R, § 6.3.)

7

Amended Warrant Agreement, WMI must assure that the LTW Holders receive the value of the Anchor Litigation.[6]

The LTW Holders also contend in their response to the summary judgment motion that WMI has breached Sections 4.2 and 4.3 of the Amended Warrant Agreement which provide that in certain circumstances the LTW Holders were entitled to receive property instead of simply stock. (A.D.I. # 70 at Ex. R, §§ 4.2 & 4.3.) They contend that such circumstances occurred when WMI merged with DBI and the DBI shareholders were given the option of receiving cash or stock in WMI.

The LTW Holders also argue that WMI has breached Section 4.2(d) because it has not assured that JPMC as a Successor Company "will enter into . . . an agreement with the Warrant Agent confirming the [LTW] Holders' rights pursuant to this Section 4.2 and providing for adjustments, which will be as nearly equivalent as may be practicable to the adjustments

---

[6] Section 4.4 provides:
If any event occurs as to which the foregoing provisions of this Article IV are not strictly applicable or, if strictly applicable, would not, in the good faith judgment of the Board, fairly and adequately protect the rights of the Holders of the LTWs in accordance with the essential intent and principles of such provisions, then the Board may make, without the consent of the Holders, such adjustments to the terms of this Article IV, in accordance with such essential intent and principles, as will be reasonably necessary, in the good faith opinion of such Board, to protect such purchase rights as aforesaid.

(A.D.I. # 70 at Ex. R, § 4.4 (emphasis added).)

8

provided for in this Article."  (<u>Id.</u> at § 4.2(d).)

     C.   <u>Need to Consider External Evidence</u>

WMI contends that the Amended Warrant Agreement is
unambiguous and merely grants the LTW Holders the right to
receive common stock of WMI upon a trigger event.  (<u>Id.</u> at §
3.1.)  The LTW Holders disagree and contend that evidence on the
intent of the Amended Warrant Agreement is necessary to
understand what rights the parties obtained thereunder.

The Court agrees with the LTW Holders that an interpretation
of the Amended Warrant Agreement (and the original Warrant
Agreement executed by DBI) requires consideration of outside
sources.  Although WMI argues that the documents are unambiguous,
WMI itself submitted (in support of its motion for summary
judgment) numerous external documents which it contends bear on
the interpretation of the agreements between the parties.  (<u>See</u>
A.D.I. # 70 at Exs. A, B, C, D, F, J, K, M, N, O.)  Those
documents included articles and other documents relating to
securities issued by other banks (at the same time as the LTWs
were issued) who had instituted similar litigation.  (<u>Id.</u> at Exs.
C, D, L, M, N, O.)  WMI argued that a comparison of the Warrant
Agreement with those other securities demonstrated that the LTW
were not interests in the Anchor Litigation but were merely
interests in the common stock of WMI.

WMI's argument hinges in part on the use of the word "may" in section 4.4 of the Amended Warrant Agreement rather than "shall" that WMI argues was used by other banks in their litigation tracking warrant agreements to mandate action by the Board to assure that the LTW Holders received the value of the Anchor Litigation. (<u>Id.</u> at Ex. R, § 4.4.) Subsequent to the filing of WMI's declarations in support of its summary judgment motion, however, WMI had to concede that one of the documents attached was inaccurate. In a motion filed on December 10, 2010, the LTW Holders contended that WMI had attached a draft of the Golden State warrant agreement, not the final, to the Shiffman Declaration. (A.D.I. # 122.) WMI conceded this and agreed to the substitution of the correct document. (A.D.I. # 127.)

In addition, however, two days before oral argument on the summary judgment motion, WMI filed a declaration of Charlotte Chamberlain by which it sought to introduce her expert opinion on the issue of whether the LTWs are interests in the Anchor Litigation or in WMI common stock. (A.D.I. # 97.) While WMI argued that it intended to use the Declaration and expert opinion only in connection with the confirmation hearing, the Court granted the Emergency Motion of the LTW Holders to preclude consideration of the Declaration and expert report because of their late filing. (Hr'g Tr. 12/2/2010 at 319-320.); A.D.I. # 137.)

10

The above demonstrates to the Court, however, that WMI concedes that an interpretation of the Amended Warrant Agreement in this case should properly include consideration of documents other than simply the contract between WMI and the LTW Holders. Namely, WMI itself asked the Court to consider similar warrant agreements issued contemporaneously by other banks in order to interpret the warrant agreements covering the LTWs at issue in this case. Further, WMI apparently believes that expert testimony is needed to explain the agreements.

In addition, the LTW Holders argued that discovery was necessary, particularly of counsel who had drafted the agreements, to ascertain the intent of those documents. The Debtors argued that the agreements were unambiguous making such parol evidence irrelevant. During the course of the confirmation hearing, however, the Debtors' own witnesses testified that they had consulted with that same counsel to answer other questions about those agreements. (Hr'g Tr. 12/3/2010 at 737-38.)

This leads the Court to conclude that there are genuine issues of material fact, including whether the agreements were intended to convey only an equity interest or offered an option to receive property and whether the events triggering such an option occurred in this case. Finally, in light of the mistake in filing what purported to be a final agreement relating to the Golden State warrants, the Court is convinced that the proper

consideration of that additional evidence mandates that all parties be afforded the opportunity to examine the documents and witnesses and to test their authenticity and relevance to the case at bar through discovery and a full trial on the merits. Therefore, summary judgment is not warranted in this case.

IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court will deny the cross motions for summary judgment.

An appropriate order is attached.


Dated: January 7, 2011                BY THE COURT:


                                      Mary F. Walrath
                                      United States Bankruptcy Judge